UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | |
|---|---|
| SIDHANT SIDHANT, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | )  No. 2:26-cv-00281-JRO-MKK |
| | ) |
| BRISON SWEARINGEN, in his official | ) |
| capacity as Sheriff of the Clay County | ) |
| Justice Center, | ) |
| FIELD OFFICE DIRECTOR, in his or her | ) |
| official capacity as Field Office Director of | ) |
| the Chicago Field Office of Enforcement | ) |
| and Removal Operations, U.S. | ) |
| Immigration and Customs Enforcement; | ) |
| U.S. Department of Homeland Security, | ) |
| TODD M. LYONS, in his official capacity | ) |
| as Acting Director, Immigration and | ) |
| Customs Enforcement, U.S. Department | ) |
| of Homeland Security, | ) |
| MARKWAYNE MULLIN, in his official | ) |
| capacity as Secretary, U.S. Department of | ) |
| Homeland Security, | ) |
| TODD BLANCHE, | ) |
| in his official capacity as Attorney | ) |
| General of the United States | ) |
| | ) |
| Respondents. | ) |

**ORDER ON PETITION FOR WRIT OF HABEAS CORPUS**

The Immigration and Nationality Act ("INA") not only authorizes but requires the Executive to detain certain aliens without a bond hearing pending decisions on their removability. The main issue in this case is whether the Petitioner, Sidhant Sidhant, falls into the category of aliens subject to mandatory detention. He does under 8 U.S.C. § 1225(b)(2)(A). As such, his detention without bond pending removal proceedings does not violate the INA or its

regulations governing bond determinations. Moreover, Petitioner's current detention does not violate the "age-out" provisions for unaccompanied minors under the Trafficking Victims Protection Reauthorization Act of 2008 and does not violate the Fifth Amendment's Due Process Clause. The Court therefore **DENIES** his Petition for Writ of Habeas Corpus. Dkt. [1].

## I.  BACKGROUND

### A.    Factual Background

The following alleged facts are not in dispute and the Court finds that they are true based on its review of the verified Petition, the answers to the Court's Order to Show Cause, and the accompanying documentary evidence. *See* 28 U.S.C. § 2242; *id.* § 2243 ("The court shall summarily hear and determine the facts . . . ."); *id.* § 2248 ("The allegations of a return to the writ of habeas corpus or of an answer to an order to show cause in a habeas corpus proceeding, if not traversed, shall be accepted as true . . . .").

Petitioner is a citizen of India. Dkt. 1 at 2, 17; Dkt. 8 at 3. On or around October 7, 2022, he entered the United States without inspection as an unaccompanied minor—at the time, he was 17 years old and about a month away from his 18th birthday—and was apprehended by U.S. Border Patrol. Dkt. 1 at 17; Dkt. 8 at 3; Dkt. 8-1 at 7. At this time, he was issued an I-862 Notice to Appear ("NTA"). Dkt. 8-1 at 7. He was eventually referred to the U.S. Department of Health and Human Services ("HHS") Office of Refugee Resettlement ("ORR") for placement. Dkt. 8 at 3; Dkt. 8-1 at 10. However, he

alleges, and Respondents do not dispute, that was released to the custody of a sponsor on his own recognizance. Dkt. 1 at 2, 17; Dkt. 8 at 3.

Petitioner has not shown, and Respondents have not alleged, that Petitioner remained in the custody of a sponsor pursuant to his referral to the ORR or that he was ever transferred to the custody of the Department of Homeland Security ("DHS") after reaching the age of majority. At some point, he obtained a commercial driver's license. *See* dkt. 8-1 at 8. Sometime after he turned 18, Petitioner applied for asylum. Dkt. 8 at 3; Dkt. 8-3.

On or around April 10, 2026—when he was 21—Petitioner was stopped by Indiana State Police for a traffic infraction. Dkt. 8 at 3–4; Dkt. 8-1 at 6. The state trooper contacted U.S. Immigration and Customs Enforcement ("ICE") regarding Petitioner's traffic stop. Dkt. 8 at 4; Dkt. 8-1 at 6. After confirming Petitioner's immigration status, ICE issued an I-200 warrant for Petitioner's arrest, dkt. 8-2, which was emailed to the state trooper, dkt. 8 at 4; dkt. 8-1 at 6. The trooper executed the warrant, arrested Petitioner, and transported him to ICE custody. Dkt. 8 at 4; Dkt. 8-1 at 6. Petitioner admitted to lacking proper immigration documents and made no claim of U.S. citizenship. Dkt. 8 at 4; Dkt. 8-1 at 7.

On April 11, 2026, ICE also initiated removal proceedings by issuing him another I-862 NTA. Dkt. 8 at 4; Dkt. 8-1 at 1. The NTA charges state that Petitioner is removable based on 8 U.S.C. § 1182(a)(6)(A)(i) ("An alien present in the United States without being admitted or paroled, or who arrives in the United States at any time or place other than as designated by the Attorney General, is

3

inadmissible.") and 8 U.S.C. § 1182(a)(7)(A)(i)(I) (lack of valid entry documentation). Dkt. 8 at 4; Dkt. 8-1 at 1, 4. At this time, he disclaimed any fear of harm if removed from the United States. Dkt. 8-1 at 8.

Petitioner was detained at the Clay County Justice Center in Brazil, Indiana, when he commenced this habeas action. Dkt. 1 at 2–3, 8, 17; Dkt. 8 at 5; Dkt. 8-1 at 6. He names as Respondents Brison Swearingen, Sheriff of the Clay County Justice Center, Brazil, IN; Field Office Director of the Chicago Field Office, Enforcement and Removal Operations; Markwayne Mullin, Secretary of the U.S. Department of Homeland Security; Todd Lyons, Acting Director of the Chicago ICE Field Office; and Todd Blanche, Acting Attorney General of the United States. Dkt. 1 at 8.

## B.      Statutory Background

As amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 (IIRIRA), two statutory provisions principally govern the detention of aliens pending their removal proceedings—8 U.S.C. § 1225 and 8 U.S.C. § 1226. While Section 1225 mandates detention in all cases, Section 1226 permits the release of some aliens on bond.

Key to Section 1225 is its definition of "applicant for admission." Section 1225(a)(1) defines an "applicant for admission" as an alien "who arrives in the United States" or who is "present in" the country but "has not been admitted." 8 U.S.C. § 1225(a)(1). The Supreme Court has explained that "applicants for admission fall into one of two categories"—"those covered by § 1225(b)(1) and those covered by § 1225(b)(2)." *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018).

4

Section 1225(b)(1) requires the detention and "expedited removal" of certain applicants for admission. *See Dep't of Homeland Sec. v. Thuraissigiam,* 591 U.S. 103, 108–09 (2020). An applicant is subject to expedited removal if he is "arriving in the United States" and determined by an immigration officer to be "inadmissible" because of fraud, misrepresentation, or lack of valid entry documentation. 8 U.S.C. § 1225(b)(1)(A)(i).[1] Upon such determination, the officer "shall order the alien removed from the United States without further hearing or review *unless* the alien indicates either an intention to apply for asylum . . . or a fear of persecution." *Id.* (emphasis added). Where an alien claims asylum, the immigration officer "shall refer" the alien to an asylum officer for an interview to determine whether he has a "credible fear of persecution." *Id.* § 1225(b)(1)(A)(ii), (B)(ii). Aliens determined to have a credible fear of persecution "shall be detained for further consideration of the application for asylum" in a standard removal hearing. *Id.* § 1225(b)(1)(B)(ii); *see Thuraissigiam,* 591 U.S. at 109 (citing 8 C.F.R. § 208.30(f)). Aliens determined to lack a credible fear of persecution are subject to expedited removal and shall be detained "until removed." *Id.* § 1225(b)(1)(B)(ii).

Section 1225(b)(2) "is broader" and "serves as a catchall provision that applies to all applicants for admission not covered by Section 1225(b)(1)."

---

[1] "[C]ertain other aliens" are also subject to expedited removal, including any aliens "designated by the Attorney General" who have "not been admitted or paroled into the United States, and who [have] not affirmatively shown, to the satisfaction of an immigration officer, that [they have] been physically present in the United States continuously for the 2-year period immediately prior to the date of the determination of inadmissibility" for fraud, misrepresentation, or lack of valid entry documentation. 8 U.S.C. § 1225(b)(1)(A)(iii)(I)–(II).

*Jennings*, 583 U.S. at 287. With exceptions not relevant here, Section 1225(b)(2)(A) provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 1229a of this title." 8 U.S.C. § 1225(b)(2)(A) (emphasis added). In other words, detention is mandatory pending "the usual removal process," which "involves an evidentiary hearing before an immigration judge" where "an alien may attempt to show that he or she should not be removed." *Thuraissigiam*, 591 U.S. at 108.

Section 1226(a), by contrast, more generally provides that, "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added). Section 1226(a) also permits the Attorney General to release an alien on "bond" or "conditional parole," unless the alien "falls into one of several enumerated categories involving criminal offenses and terrorist activities." *Jennings*, 583 U.S. at 289; *see* 8 U.S.C. § 1226(c)(1)(A)–(E). For those enumerated categories, detention pending removal is also mandatory.

## II.  DISCUSSION

Petitioner seeks release from detention while he awaits his removal proceedings because he contends he is detained pursuant to a recent, unlawful policy shift by Respondents. Respondents rely upon Section 1225(b)(2)(A) to detain Petitioner without a bond hearing pending his removal proceedings because they argue he is an "applicant for admission." Petitioner argues that

6

Section 1226(a) and its associated regulations govern his detention and that he not only has a right to a bond hearing but is entitled to immediate release. Dkt. 1 at 17–18; *see also* dkt. 10 at 2–3. Alternatively, he argues that his detention violates the "age out" provisions for unaccompanied minors under 8 U.S.C. § 1232(c)(2)(B). Dkt. 10 at 2–6. He also brings a claim under the Fifth Amendment's Due Process Clause. Dkt. 1 at 18–24. Ultimately, he is not entitled to the relief he seeks.[2]

### A. *Castañon-Nava* does not control this case.

As a preliminary matter, Respondents alerted the Court to the Seventh Circuit's recent opinion in *Castañon-Nava v. U.S. Department of Homeland Security,* No. 25-3050, --- F.4th ---, 2026 WL 1223250 (7th Cir. May 5, 2026), *see* dkt. 11, which includes a fulsome discussion of the Section 1225(b)(2)(A) issue presented in the petition. Petitioner also cites many other cases from district courts within the Seventh Circuit to support his arguments. Dkt. 1 at 13–14. However, the *Castañon-Nava* opinion confirms that the Seventh Circuit has yet to issue binding precedent resolving the scope of Respondents' mandatory detention authority under Section 1225(b)(2)(A).

In *Castañon-Nava,* the Seventh Circuit addressed allegations that DHS and ICE violated a 2022 Consent Decree addressing the warrantless arrests of aliens pursuant to 8 U.S.C. § 1357(a)(2). The Consent Decree resolved a class-action lawsuit alleging violations of 8 U.S.C. § 1357, brought by a certified class

---

[2] Petitioner argues that the Court should not require exhaustion of administrative remedies in this case. Dkt. 1 at 5–7. Respondents do not argue exhaustion in their Returns to the Order to Show Cause, dkts. 8, 9, so the Court does not address the issue.

of "[a]ll current and future persons arrested without a warrant for a civil violation of U.S. immigration laws within the area of responsibility of the ICE Chicago Field Office," against DHS, ICE, and various federal officials. *Castañon-Nava*, 2026 WL 1223250, at *2. In the Consent Decree, the defendants agreed "to comply with § 1357(a)(2) when making warrantless arrests and issue a 'Broadcast Statement of Policy' affirming 'the underlying laws and policies applicable to all arrests effected under 8 U.S.C. § 1357(a)(2).'" *Id.* at *1. The Consent Decree also had an expiration date of May 12, 2025. *Id.* at *2. One day after the expiration date, the *Castañon-Nava* class alleged that the defendants violated the Consent Decree. *Id.* In relevant part, the district court issued two orders to address the breach. First, it ordered the Consent Decree extended by 118 days. Second, it ordered the defendants to release "13 class members, as well as approximately 200 additional individuals, whose arrests (in the district court's words) 'potentially' violated § 1357(a)(2)." *Id.* at *1.

The defendants moved to stay both orders pending appeal. That motion was granted in part and denied in part in a 2–1 decision. *Castañon-Nava v. U.S. Dep't of Homeland Sec.*, 161 F.4th 1048 (7th Cir. 2025). After full briefing and oral argument, a majority of the Seventh Circuit ultimately affirmed in part and denied in part the district court's two orders, with Judge Lee writing the majority opinion and Judge Pryor concurring in part and concurring in the judgment. Between these two opinions, the Seventh Circuit affirmed the district court's first order "extend[ing] the Consent Decree by 118 days" and part of the second order "releas[ing] . . . class members for whom a determination has been made that

8

they were arrested without a warrant in contravention of 8 U.S.C. § 1357(a) and the Consent Decree," but reversed the remainder of the district court's second order "to the extent it requires the release of 'potential class members' and any person who was arrested pursuant to an I-200 warrant (defective or otherwise)." *Castañon-Nava*, 2026 WL 1223250, at \*22.  Judge Kirsch dissented, concluding that the Court "should vacate both orders and remand the case to the district court."  *Id.* at \*39 (Kirsch, J., dissenting).

So far, this has little to do with the case at hand.  Here is how a discussion of Section 1225(b)(2)(A) arose in that case.  In opposing the district court's second order—that is, the one ordering the release of 13 class members and approximately 200 "potential" class members—the defendants argued, in relevant part, that the district court "restrict[ed] the government's ability to detain noncitizens pursuant to its authority under § 1225(b)(2)(A)[.]"  *Id.* at \*8. On that argument, however, *Castañon-Nava* is a fractured 1–1–1 opinion.

Judge Lee confronted the defendants' Section 1225(b)(2)(A) argument and disagreed with it, while acknowledging that "his colleagues . . . believe that we should not reach this issue."  *Castañon-Nava*, 2026 WL 1223250, at \*9–21 (Lee, J.).  Judge Pryor concluded that it was not necessary for the Court to "reach[] the merits of the Plaintiffs' argument that the Defendants' interpretation of 8 U.S.C. § 1225(b)(2)(A) is improper," declining to join that portion of Judge Lee's opinion and voting to resolve the case on other grounds.  *Id.* at \*22 (Pryor, J., concurring in part and concurring in judgment); *see id.* at \*25–26.  And Judge

9

Kirsch concluded in his dissent that the defendants' reading of Section 1225(b)(2)(A) is correct.  *Id.* at *34–38 (Kirsch, J., dissenting).

The portion of the merits opinion in *Castañon-Nava* addressing the meaning and applicability of Section 1225(b)(2)(A) is, therefore, not a precedential holding of the Seventh Circuit,[3] and both Judge Lee's and Judge Kirsch's opinions are persuasive authority on this issue.  While the reasoning in these opinions does not arise from the procedural posture of this case (i.e., a habeas petition directly challenging the Respondents' application of Section 1225(b)(2)(A) to the petitioner), both warrant serious consideration.  The same is true of the many orders from this District that have deferred to Judge Lee's reasoning in the *Castañon-Nava* stay opinion,[4] which mirrors his reasoning in

---

[3] The Seventh Circuit's discussion of Section 1225(b)(2)(A) in its emergency stay order in *Castañon-Nava*, 161 F.4th 1048, is also not binding precedent.  As the merits opinion all but confirms, the stay order's discussion of Section 1225(b)(2)(A) is dicta because it was not essential to the resolution of the stay order or the merits.  *See Seminole Tribe of Fla. v. Florida*, 517 U.S. 44, 66–67 (1996) ("When an opinion issues for the Court, it is not only the result but also those portions of the opinion necessary to that result by which we are bound.").  Further, decisions from motions panels at the stay stage, even those directly on point, are "not entitled to the weight of a decision made after plenary submission" because they are "summary in character" and "made often on a scanty record." *Johnson v. Burken*, 930 F.2d 1202, 1205 (7th Cir. 1991).

[4] *See, e.g.*, *Alejandro v. Olson*, 817 F. Supp. 3d 672, 683 (S.D. Ind. 2025) ("The phrase 'seeking admission,' . . . means that a noncitizen must be actively 'seeking' 'lawful entry.'" (internal citation omitted)); *Campos Leon v. Forestal*, No. 1:25-cv-01774-SEB-MJD, 2025 WL 2694763, at *3 (S.D. Ind. Sep. 22, 2025) ("Meanwhile, the respondents' contention that Mr. Campos Leon's detention is mandatory under § 1225(b)(2) is, at best, incomplete. Assuming for the sake of argument that Mr. Campos Leon is an 'applicant for admission,' the respondents has not explained how he is 'seeking admission' such that § 1225(b)(2) applies.").  Opinions of other judges in this District do not bind this Court.  *Trump v. CASA, Inc.*, 606 U.S. 831, 858 n.17 (2025) (citation omitted) ("[D]istrict court opinions lack precedential force even vis-à-vis other judges in the same judicial district.").

10

his merits opinion and three other recent opinions from the Second, Sixth, and Eleventh Circuits. *See Cunha v. Freden*, No. 25-3141-pr, --- F.4th ---, 2026 WL 1146044 (2d Cir. Apr. 28, 2026); *Lopez-Campos v. Raycraft*, --- F.4th ---, 2026 WL 1283891 (6th Cir. May 11, 2026); *Alvarez v. Warden*, No. 25-14065, --- F.4th ---, 2026 WL 1243395 (11th Cir. May 6, 2026).

Respectfully, and for the reasons explained below and in this Court's prior orders, *e.g.*, *Demir v. Noem*, No. 2:26-cv-00086-JRO-MKK, 2026 WL 706485, at *4 (S.D. Ind. Mar. 13, 2026), this Court reads Section 1225(b)(2)(A) in line with Judge Kirsch's merits opinion in *Castañon-Nava*, which is consistent with the reasoning of the Fifth and Eighth Circuits addressing the precise issue on the merits in habeas actions. *Buenrostro-Mendez v. Bondi*, 166 F.4th 494 (5th Cir. 2026); *Avila v. Bondi*, 170 F.4th 1128 (8th Cir. 2026).[5]

**B.    Petitioner is not entitled to a bond hearing because Section 1225(b)(2)(A) mandates his detention pending removal proceedings.**

Section 1225(b)(2)(A)'s plain terms require Petitioner's detention pending his removal proceedings. When engaging in statutory interpretation, the Court "start[s] with the text of the statute to ascertain its plain meaning." *United States v. Melvin*, 948 F.3d 848, 851 (7th Cir. 2020) (internal quotation and citation omitted). In determining a statute's plain meaning, the Court is guided by the

---

[5] *See also Rayo v. Olson*, No. 2:25-cv-2064-BHL, 2026 WL 594079 (E.D. Wis. Mar. 3, 2026); *Hernandez v. Olson*, No. 2:25-cv-1670-BHL, 2026 WL 161509 (E.D. Wis. Jan. 21, 2026); *Rodriguez v. Olson*, 814 F. Supp. 3d 945 (N.D. Ill. 2026) (Pacold, J.); *Ugarte-Arenas v. Olson*, No. 2:25-cv-1721-WCG, 2025 WL 3514451 (E.D. Wis. Dec. 8, 2025), *appeal docketed*, No. 26-1023 (7th Cir. Jan. 7, 2026); *Rojas v. Olson*, No. 2:25-cv-1437-BHL, 2025 WL 3033967 (E.D. Wis. Oct. 30, 2025), *appeal docketed*, No. 25-3127 (7th Cir. Nov. 25, 2025).

11

statutory language at issue and the language and design of the statute as a whole. *Id.* at 852. Unless specifically defined, a statute's words are given their "ordinary, contemporary, and common meaning by looking at what they meant when the statute was enacted . . . ." *Id.*

To start, Petitioner is an "applicant for admission." The term is expressly defined in the statute as follows: "An alien present in the United States who has not been admitted or who arrives in the United States (whether or not at a designated port of arrival . . .) shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). While the definition of "applicant for admission" does encompass aliens who may have recently arrived at a port of entry or crossed the border, that definition is broader. "[A]pplicant for admission" includes any unadmitted alien present in the United States no matter when they entered or how long they have been here. *See Buenrostro-Mendez*, 166 F.4th at 502 ("Presence without admission deems the petitioners to be applicants for admission."). There is no dispute that Petitioner is an alien who is present in the United States and has not been admitted. He is therefore deemed an "applicant for admission" under the statute.

As noted above, the detention of applicants for admission falls into one of two statutory categories—Section 1225(b)(1) or the "catchall" Section 1225(b)(2). *Jennings*, 583 U.S. at 287. The Court has established that Section 1225(b)(1) does not apply to Petitioner. *See* Section II.A, *supra.* Section 1225(b)(2)(A) requires the detention of applicants for admission pending removal proceedings "if the examining immigration officer determines that an alien seeking admission

is not clearly and beyond a doubt entitled to be admitted." Petitioner makes no argument that he is "clearly and beyond a doubt entitled to be admitted" to the country. Thus, Section 1225(b)(2)(A) mandates his detention pending removal proceedings. *See Matter of Yajure Hurtado,* 29 I. & N. Dec. 216, 220, 229 (BIA 2025) (holding that immigration judge "lacked authority to hear" alien's bond request "because aliens who are present in the United States without admission are applicants for admission as defined under . . . 8 U.S.C. § 1225(b)(2)(A), and must be detained for the duration of their removal proceedings").

Petitioner raises several arguments rejecting this straightforward application of Section 1225. The Court does not find these arguments persuasive.

### 1. "Seeking Admission"

Petitioner argues Section 1225(b)(2)(A)'s "seeking admission" language limits its applicability to aliens who, unlike himself, affirmatively seek lawful entry into the United States. Dkt. 1 at 9–11; Dkt. 10 at 3, 6–7. The Court disagrees.

This Court has previously determined that the statutory language and context confirm that there is no separate and independent "seeking admission" element to Section 1225(b)(2)(A). *See Demir,* 2026 WL 706485, at *4; *Singh v. Swearingen,* No. 2:26-cv-00167-JRO-MG, 2026 WL 847715, at *5 (S.D. Ind. Mar. 27, 2026). Read most plainly, the term "seeking admission" is simply a synonym for applying for admission. And applying for admission is a participial form of the noun "applicant for admission." *See Buenrostro-Mendez,* 166 F.4th at 502

13

("The everyday meaning of the statute's terms confirms that being an 'applicant for admission' is not a condition independent from 'seeking admission.'"); *Avila*, 170 F.4th at 1134 ("When a person applies for something, they are necessarily seeking it." (cleaned up)).[6]

Petitioner argues he is not subject to mandatory detention because, broadly speaking, Section 1225 applies only to aliens "at the Nation's borders and ports of entry." Dkt. 1 at 10 (quoting *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018)); Dkt. 10 at 7–8 (same). By contrast, he says Section 1225 does not apply to someone like him "who entered the U.S. more than three (3) years before he was apprehended." Dkt. 1 at 3, 16.

General characterizations of a statute's overall purpose, however, cannot substitute for its specific and plain words. *See Kloeckner v. Solis*, 568 U.S. 41, 55 n.4 (2012) ("[E]ven the most formidable argument concerning the statute's purposes could not overcome the clarity . . . in the statute's text."). As this Court discussed in a prior Order, Section 1225 concerns "applicant[s] for admission," which is a clearly defined term that includes but is not restricted only to arriving aliens or other recent border crossers. *Demir*, 2026 WL 706485, at *5. The Supreme Court did not hold otherwise in *Jennings v. Rodriguez*. That decision repeatedly stated that it was summarizing Sections 1225 and 1226 in "general" terms. *See Jennings*, 583 U.S. at 287 ("That process of decision *generally* begins

---

[6] The Court incorporates by reference its more fulsome statutory interpretation of "seeking admission" in 8 U.S.C. § 1225(b)(2)(A) as set forth in *Demir*, 2026 WL 706485, at *3–5, *Singh*, 2026 WL 847715, at *5–7, and *Gonzalez-Lopez v. Swearingen*, No. 2:26-cv-00200-JRO-MG, 2026 WL 1270065, at *7–8 (S.D. Ind. May 8, 2026).

14

at the Nation's borders and ports of entry, where the Government must determine whether an alien seeking to enter the country is admissible." (emphasis added)); *id.* at 288 ("Section 1226 *generally* governs the process of arresting and detaining [aliens inside the United States] pending their removal." (emphasis added)).  *Accord Buenrostro-Mendez,* 166 F.4th at 505; *Avila,* 170 F.4th at 1136–37.

### 2.  1225 Versus 1226

Petitioner argues that Section 1226, not Section 1225(b)(2)(A), applies to him and all other aliens "who have not been admitted and entered without inspection" and have been "charged as inadmissible."  Dkt. 1 at 3, 10; Dkt. 10 at 6, 9–10.  Petitioner argues that *all* aliens arrested and placed in removal proceedings are entitled to a bond hearing under Section 1226(a) provided they have not committed certain criminal offenses listed in 8 U.S.C. § 1226(c).  Dkt. 1 at 3, 9–12.  This argument both overlooks the text of Section 1225(b)(2)(A)— stating the applicant for admission "shall be detained" for removal proceedings— and misunderstands the provision's relationship with Section 1226(a).

"[I]t is a commonplace of statutory construction that the specific governs the general[,]" especially when construing comprehensive statutory schemes— like the INA—that are often interspersed with "specific solutions" to "specific problems."  *RadLAX Gateway Hotel, LLC v. Amalgamated Bank,* 566 U.S. 639, 645 (2012) (quoting *Morales v. Trans World Airlines, Inc.,* 504 U.S. 374, 384 (1992) and *Varity Corp. v. Howe,* 516 U.S. 489, 519 (1996) (Thomas, J., dissenting)).  "The general/specific canon is perhaps most frequently applied to

15

statutes in which a general permission or prohibition is contradicted by a specific prohibition or permission. To eliminate the contradiction, the specific provision is construed as an exception to the general one." *RadLAX Gateway Hotel*, 566 U.S. at 645. "[T]he canon avoids not contradiction but the superfluity of a specific provision that is swallowed by the general one." *Id.*

Here, the INA contains a general provision—the Attorney General may release most ICE arrestees on bond, 8 U.S.C. § 1226(a)—and a specific provision—every "applicant for admission" must be detained without a bond hearing, 8 U.S.C. § 1225(b)(2)(A). The specific is the exception to the general, and it applies to Petitioner in this case. *Accord Rodriguez v. Olson*, 814 F. Supp. 3d 945, 958 (N.D. Ill. 2026) (applying general/specific canon to enforce Section 1225(b)(2)(A) over Section 1226(a)); *Ayala v. Harper*, No. 1:26-cv-204-CLM-GMB, 2026 WL 501113, at *8 (N.D. Ala. Feb. 23, 2026) (same).

Applying the general/specific canon here is consistent with the plain text and structure of Section 1225 and 1226. Section 1226(a) is permissive: "[A]n alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States." (emphasis added). In other words, the Executive is free to exercise its discretion in how it executes the provisions of Section 1226 provided it does so within the bounds of Section 1225(b)(2)(A)'s clear mandate to detain "applicants for admission" pending removal proceedings "if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted." Enforcing that more specific mandate of Section 1225(b)(2)(A) does not render any of Section 1226

superfluous as to the Petitioner.  It harmonizes the two provisions.  At any rate, a "preference for avoiding surplusage constructions is not absolute," especially when the general/specific canon better harmonizes the apparently conflicting statutory provisions.  *Lamie v. U.S. Trustee*, 540 U.S. 526, 536 (2004); *RadLAX Gateway Hotel*, 566 U.S. at 645; *see also Rimini Street, Inc. v. Oracle USA, Inc.*, 586 U.S. 334, 346 (2019) ("Sometimes the better overall reading of the statute contains some redundancy."); *see also Castañon-Nava*, 2026 WL 1223250, at *39 (Kirsch, J., dissenting) ("The government's interpretation of § 1225(b)(2)(A) does not make the Laken Riley Act superfluous, and any overlap is understandable given that Congress passed the Act 'at a time when the Executive was still declining to exercise its full enforcement authority [under § 1225].'" (alteration in original) (quoting *Buenrostro-Mendez*, 166 F.4th at 505)).

### 3.    Past Practice

Petitioner also argues that Respondent's application of Section 1225(b)(2)(A)'s mandatory detention provision not only to recent arrivals but also to unadmitted aliens already in the country like himself is contrary to "decades of prior [agency] practice."  Dkt. 1 at 9–10; Dkt. 10 at 14.  However, the Court takes seriously its independent duty to interpret the law as written, regardless of an agency's past practice.  And "in cases where [a court's] own judgment . . . differ[s] from that of other high functionaries," the Court is "not at liberty to surrender, or to waive it.'"  *Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386

17

(2024) (quoting *United States v. Dickson*, 40 U.S. (15 Pet.) 141, 162 (1841) (Story, J.)).

* * *

In sum, Petitioner is subject to mandatory detention pending removal proceedings under the plain terms of Section 1225(b)(2)(A).  As such, Respondents have not violated Section 1226(a) by detaining him without a bond hearing.  As he is not eligible for a discretionary bond hearing, the Court does not address his argument that he is entitled to immediate release.

**C.     Bond Regulations**

Petitioner next argues that "[t]he application of § 1225(b)(2) to [himself] unlawfully mandates his continued detention and violates [the bond regulations at] 8 C.F.R. §§ 236.1, 1236.1 and 1003.19." Dkt. 1 at 17–18.  But this argument simply restyles his previous argument that Section 1226(a) applies to his detention and not Section 1225.

The regulations Petitioner cites implement and elaborate upon the procedures prescribed by Section 1226.  As their shared title suggests, the regulations at 8 C.F.R. §§ 236.1 and 1236.1 concern the same subject matter— "apprehension, custody, and detention."  These regulations include procedures for the Section 1226(a) bond determinations and appeals thereof.  For example, both regulations state:

> Any officer authorized to issue a warrant of arrest may, in the officer's discretion, release an alien not described in **section 236(c)(1) of the Act** [8 U.S.C. § 1226(c)(1)], under the conditions at **section 236(a)(2) and (3) of the Act** [8 U.S.C. § 1226(a)(2), (3)]; provided that the alien must demonstrate to the satisfaction of the officer that

18

> such release would not pose a danger to property or persons, and that the alien is likely to appear for any future proceeding.

8 C.F.R. § 236.1(c)(8); *id.* § 1236.1(c)(8) (emphasis added).  They also provide:

> [T]he immigration judge is authorized to exercise the authority in **section 236 of the Act** [8 U.S.C. § 1226] . . . to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 1003.19 of this chapter.

8 C.F.R. § 236.1(d)(1); *id.* § 1236.1(d)(1) (emphasis added).  For its part, 8 C.F.R. § 1003.19 further specifies that "bond determinations made by the service pursuant to 8 CFR part 1236 may be reviewed by an Immigration Judge pursuant to 8 CFR part 1236" and establishes procedures for such review.

These regulations implement Section 236 of the INA, that is, 8 U.S.C. § 1226, and impose no broader obligation on the government than Section 1226 itself.  *See Fed. Election Comm'n v. Cruz,* 596 U.S. 289, 301 (2022) ("An agency's regulation cannot operate independently of the statute that authorized it." (internal quotation marks and citation omitted)).  The Court has determined that Section 1225 governs Petitioner's detention—not Section 1226 and its discretionary bond provision.  The cited bond regulations therefore do not apply to Petitioner, and Respondents have not violated them by detaining him without bond pending removal proceedings.

**D.   Petitioner's current detention does not violate the TVPRA.**

For the first time on reply, Petitioner cites his status as a former

"unaccompanied alien child" ("UAC"),[7] arguing that the "age-out" provision of the Trafficking Victims Protection Reauthorization Act of 2008 ("TVPRA") independently gives him the right to immediate release or at least a bond redetermination hearing.  Dkt. 10 at 4–6.  The Court disagrees.

Broadly speaking, the TVPRA created and directs several federal agencies to develop and implement "policies and procedures to ensure that unaccompanied alien children in the United States are safely repatriated to their country of nationality or of last habitual residence."  8 U.S.C. § 1232(a)(1).  It designates the Office of Refugee Resettlement ("ORR") within the Department of Health and Human Services as the agency responsible for UACs.  8 U.S.C. § 1232(b)(1).  It also requires the agency to "promptly" place UACs "in the least restrictive setting that is in the best interest of the child."  8 U.S.C. § 1232(c)(2)(A).  UACs who are still in ORR custody when they reach 18 years of age must be transferred to the custody specified by DHS under the "age-out" provision, 8 U.S.C. § 1232(c)(2)(B), which requires DHS to "consider placement in the least restrictive setting."

---

[7] The term "unaccompanied alien child" ("UAC") means

    a child who –
(A)    has no lawful immigration status in the United States;
(B)    has not attained 18 years of age; and
(C)    with respect to whom –
    (i)    there is no parent or legal guardian in the United States; or
    (ii)    no parent or legal guardian in the United States is available to provide care and physical custody.

6 U.S.C. § 279(g)(2); 8 U.S.C. § 1232(g) ("[T]he term 'unaccompanied alien child' has the meaning given such term in section 279(g) of Title 6.").

Petitioner cites this "age-out" provision and argues that "[b]ecause Petitioner was initially detained and released by ORR consistent with the TVPRA, despite having aged out, he remains protected under 8 U.S.C. § 1232(c)(2)(B) and thus cannot be properly classified as an applicant for admission subject to mandatory detention under 8 U.S.C. § 1225." Dkt. 10 at 6. He cites no authority to support this interpretation of the statute. And the Court's understanding of the plain meaning of 8 U.S.C. § 1232(c)(2)(B) leads to a different conclusion.

The text states

> [i]f a minor described in subparagraph (A) [that is, one "in the custody of the Secretary of Health and Human Services" and placed in a suitable setting] reaches 18 years of age and is transferred to the custody of the Secretary of Homeland Security, the Secretary shall consider placement in the least restrictive setting available after taking into account the alien's danger to self, danger to the community, and flight risk. . . .

8 U.S.C. § 1232(c)(2)(B). The text plainly says that individualized assessment applies only at the point where a minor "reaches 18 years of age and is transferred to" DHS. *Alvarez v. Genalo*, No. 26-CV-02250 (JAV), 2026 WL 1206212, at *7 (S.D.N.Y. May 4, 2026) ("[T]he consideration of least restrictive placement required by the statute [§ 1232(c)(2)(B)] only occurs once the conditional requirements of the antecedent clause are met—that is, when the UAC reaches the age of 18 and custody is transferred."). Section 1232(c)(2)(B)'s "age-out" provision does not create a permanent right to an individualized bond redetermination whenever an alien who was formerly a UAC is arrested by ICE well after reaching the age of majority. Rather, its plain terms apply only during the critical time period when UACs become adults and are "transferred" from

21

ORR to the "custody" of DHS.  The statute is silent on what happens years later after UACs are no longer in DHS custody, have not yet been "safely repatriated to their country of nationality or of last habitual residence"—as the TVPRA presumes they generally will be, 8 U.S.C. § 1232(a)(1)—and have instead applied for asylum as an adult.

Further, nothing in the text of Section 1232 suggests that Section 1232(c)(2)(B)'s individualized consideration of former UACs upon their transfer to DHS at age 18 establishes a permanent right to future individualized bond redetermination hearings.  It appears that the only permanent protection former UACs may enjoy in Section 1232 after reaching the age of majority is the right to "special immigrant status" under 8 U.S.C. § 1101(a)(27)(J), but only if they applied for asylum while they were still a UAC.  8 U.S.C. § 1232(d)(6).  And here, the record shows that Petitioner applied for asylum after he turned 18, not before.  Dkt. 8 at 3 (citing dkt. 8-1 at 5; dkt. 8-3); *see also* Dkt. 8-3.  Accordingly, nothing in the text of Section 1232 suggests that its statutory protections still apply to Petitioner.  *Hernandez,* 2026 WL 161509, at *7 ("any protections of the TVPRA were no longer applicable" because petitioner "was nineteen years old when he applied for asylum" (citing *Harmon v. Holder*, 758 F.3d 728, 735 (6th Cir. 2014)).

Here, the "transfer" and "custody" presumed in Section 1232(c)(2)(B) are absent.  Petitioner "reache[d] 18 years of age" a few years ago, *see* dkt. 8-1 at 5, and there is no evidence in the record reflecting that Petitioner was ever "transferred to" DHS custody when he reached 18 years of age.  Petitioner did

not present any evidence suggesting that he was ever transferred to DHS custody after he turned 18 before his arrest in April, much less that he ever received consideration for placement in a least restrictive setting at any time before his arrest.  It appears that he was transferred to an ORR sponsor before he turned 18. Dkt. 1 at 2.  His petition then states he was released on his own recognizance pursuant to Section 1226, dkt. 1 at 3, not that he was transferred by ORR to DHS upon turning 18.  His reply makes the conclusory, and contradictory, remark that at some unspecified time he was "released by ORR consistent with the TVPRA," dkt. 10 at 6, but does not further explain whether his release was pursuant to an individualized consideration of least restrictive placement when he reached 18, or simply on his own recognizance pursuant to Section 1226 (as he stated in his petition, *see* dkt. 1 at 3).

Either way, the record before the Court shows that Petitioner is 21 years old and was not in DHS custody before his arrest on April 10, 2026.  Dkt. 8-1 at 5–7. His circumstances are materially different than the situation presumed in Section 1232(c)(2)(B).  *Hernandez*, 2026 WL 161509, at *7 (holding "the statutory requirement [under § 1232(c)(2)(B)] that the government consider the least restrictive option would not apply" because habeas petitioner "was not in ORR's custody—he was released to the custody of a family member and never transferred to the custody of DHS" (citing *Jose L.P. v. Whitaker*, 431 F. Supp. 3d 540, 550 (D.N.J. 2019)).[8]

---

[8] It is an open question whether there is a direct conflict between ICE's mandatory detention authority under Section 1225(b)(2)(A) and a former UAC's right to consideration for least restrictive placement after transfer to DHS custody during that

Section 1232(c)(2)(B) does not require that Petitioner receive a bond redetermination hearing or immediate release.  Since Section 1232(c)(2)(b) no longer applies to him, there is no statutory basis to hold that he does not fall within the plain meaning of "applicant for admission," as discussed above.

**E.     Petitioner's current detention does not violate the Fifth Amendment.**

Finally, Petitioner argues his current detention violates the Fifth Amendment's Due Process Clause.  *See* Dkt. 1 at 18–24.  It does not.

The Due Process Clause applies to aliens within the United States "whether their presence here is lawful, unlawful, temporary, or permanent." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).  However, the Supreme Court has held that "[d]etention during removal proceedings is a constitutionally permissible part of that process." *Demore v. Kim*, 538 U.S. 510, 531 (2003).  That holding settles the issue.  And this Court reached the same conclusion in a previous action that is materially indistinguishable from this case.  *Demir*, 2026 WL 706485, at *7–8.

Petitioner argues that due process requires an "individualized assessment of Petitioner's custody status at the time of his arrest" or consideration of whether "Petitioner poses a danger or flight risk." Dkt. 1 at 22.  But the Supreme Court already anticipated this objection and rejected it: "[W]hen the Government deals with deportable aliens, the Due Process Clause does not require it to

---

crucial season when a UAC reaches 18 years of age.  *E.g.*, *Alvarez*, 2026 WL 1206212 at *7 (holding that ICE could not detain former UAM without a bond redetermination hearing under Section 1225(b)(2)(A) on her eighteenth birthday because Section 1232(c)(2)(B) applied instead).  But that question is not presented in this case.

employ the least burdensome means to accomplish its goal." *Demore*, 538 U.S. at 528. Applied to Petitioner, this means that Respondents do not have to justify mandatory detention on a case-by-case basis. Respondents may enforce the policy Congress already adopted when it enacted the mandatory detention provision in Section 1225(b)(2)(A) without an individualized bond hearing.

Finally, in *Zadvydas*—where the Supreme Court held that removal is "no longer practically attainable," 533 U.S. at 690, thereby eliminating the premise for detention pending removal—detention for up to six months was presumptively constitutional, *id.* at 701. Petitioner has been detained by ICE pending his removal proceedings for just over two months. Accordingly, Petitioner's current detention by ICE does not violate his due process rights.

### III.  CONCLUSION

For the foregoing reasons, the Court **DENIES** Petitioner Sidhant Sidhant's Petition for Writ of Habeas Corpus, dkt. [1], and **DISMISSES** this case with prejudice. Final judgment shall issue by separate entry.

**SO ORDERED.**

Date:  5/20/2026

_____
Justin R. Olson
United States District Judge
Southern District of Indiana

Distribution:

All ECF-registered counsel of record via email

25